UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STATE AUTO PROPERTY AND CAUSALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH GRASLE., <br><br> Defendant. | Case No. 3: 21-cv-1117-JPG |

**MEMORANDUM AND ORDER**

### I. Introduction

This matter comes before the Court on an in-camera inspection. On March 15, 2022, upon request of the parties, the Court conducted a status conference regarding a discovery dispute (Doc. 17). The Court heard arguments on the discovery dispute – namely regarding redactions that Plaintiff State Auto Property and Casualty Insurance Company ("Plaintiff" and "State Auto") made to a claim file of Defendant Kenneth Grasle ("Defendant" or "Grasle"). State Auto provided the redacted claims profile during the ordinary course of discovery and indicated the redactions were made because the information was protected pursuant to attorney-client privilege and/or work product privilege.

Grasle requested an in-camera inspection to view the documents and determine whether the documents are, in fact, properly redacted pursuant to the privilege. The Court granted the request and later requested briefing on the issue.

### II. Background

This case is a declaratory judgment action, the basis of which is an insurance coverage dispute arising out of Grasle's claim for uninsured motorist benefits against State Auto. Grasle was involved in a work-related auto accident during the scope of his employment on May 18, 2018. He

1

filed a workers' compensation claim, which his employer Schulte Supply, Inc., covered and defended. His employer and its insurer, The Hartford, settled the workers' compensation claim on May 4, 2021. Grasle sought compensation under a separate uninsured motorist policy held by his employer issued by State Auto. Grasle filed a claim with the American Arbitration Association ("AAA") on February 19, 2019. State Auto hired HeplerBroom to defend the claims made by Grasle in the arbitration claim. This claim was set to be arbitrated in August 2021.

Grasle states that it sent discovery responses containing pleadings and communications in Grasle's underlying workers' compensation claim against Schulte Supply to State Auto throughout 2020 and 2021. (Doc. 19 at 2). State Auto filed the instant complaint for declaratory judgment on September 9, 2021. State Auto claims that Grasle was not covered under its uninsured motorist policy 1) because Grasle did not seek State Auto's consent to settle the workers' compensation claim; and 2) State Auto did not owe any additional elements of loss to Grasle, claiming that State Auto had completely recovered through his workers' compensation claim. Grasle filed a counterclaim alleging that the State Auto is estopped from denying to Grasle under the "mend the hold" doctrine, which "prohibits an insurer from denying a claim for one reason and then changing the reason in its denial in the midst of litigation." (Doc. 19 at 7).

Grasle is requesting this Court order State Auto to produce the unredacted claims file because the documentation in the claims file is "at issue" in this claim because of the "mend the hold" doctrine and therefore not protected by any privilege. Additionally, Grasle argues that the privilege does not apply where the insurer (State Auto) and insured (Grasle) have a "common interest." State Auto argues this is not an issue of "common interest" because counsel did not have a common interest in defending a third-party claim but was instead a first party adversarial claim and communications where State Auto and its attorneys were privileged.

### III. Analysis

A Court has discretion to conduct an in-camera review of documents at issue to assist regarding privilege claims. *Wier v. United Airlines, Inc.*, No. 19-CV-7000, 2021 WL 1517975, at *3 (N.D. Ill. April 16, 2021).

The work product privilege is designed to protect material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney.... or agent)." Fed.R.Civ.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The "mental impressions, conclusions, opinions, or legal theories" of an attorney are also to be specially protected. *Taylor*, 329 U.S. at 510–11, 67 S.Ct. at 393. Work product is protected because it would otherwise confer an unfair advantage to a lawyer by allowing him to advance his case based on the work of another attorney, and to unfairly have access to material which would allow him to counteract the other attorney's strategy. *Binks*, 709 F.2d at 1118.

The anticipation of future litigation must have been the primary motivation which led to the creation of the documents. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 136 (N.D. Ill. 1993). "Although the litigation need not be ongoing or imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Id*. (internal citations omitted). Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable. *Id*.

The attorney-client privilege is designed to protect from discovery documents which reflect communications between a client and his attorney, because such communications might contain confidential information about the client. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

As with the work product privilege, the attorney-client privilege is a narrow one, and only applies within certain carefully described limits. In the Seventh Circuit Court of Appeals, the scope of the privilege has been defined as follows:

> (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *White*, 950 F.2d at 430.

The privilege applies to communications both by a client to a lawyer and from a lawyer to a client. *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). But the legal advice given to the client must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice. As a result, where documents or conversations are created pursuant to business matters, they must be disclosed. *Allendale Mut. Ins. Co.*, 152 F.R.D. at 137 (internal citations omitted).

### A. Unprotected Business Advice

Grasle argues that the claims file is not privileged because the redacted items are business advice and not legal advice. "It is the very nature of an insurer's business to investigate and evaluate the claims of its insured, and the fact that the investigation and evaluation continues after litigation commences is not conclusive proof that material has been created to aid in that litigation." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. at 136 (finding Allendale was obligated to notify reinsurers of status of the claim and routine notifications do not qualify as work product of an agent or attorney in anticipation of litigation). State Auto argues that the claims file has been carefully redacted and are mostly "verbatim communications between State Auto and HeplerBroom regarding defense of the uninsured motorist case and/or coverage issues presented." (Doc. 20 at 5).

The Court has reviewed the unredacted claims file and agrees with State Auto. First, while this is not a document created by a lawyer, it appears to be an internal State Auto document wherein any information related to the claim is memorialized, including conversations and emails. However, not being prepared by lawyers "is not fatal to a claim of protection" and the Court does not find the business advice of investigating and evaluating the claim to be the focus of the communications. The Court finds that these communications to be memorialization of conversations with State Auto and HeplerBroom, for the purpose of legal advice, and "related to preparation for litigation other than in an incidental manner." *Allendale Mut. Ins. Co.*, 152 F.R.D. at 136-137 (documents do not fall under work product privilege because "vast majority of documents are simply private musings of non-lawyer employees of a non-party" and thus "mere insurance business material."). The Court has reviewed clear language in the claims file regarding preparing the file for litigation. Clearly, notes regarding strategizing for and drafting the complaint for declaratory judgment, as well as any notes posted after the complaint was filed are properly redacted. Additionally, HeplerBroom attorneys had become involved in this case when they received the arbitration demand from Grasle and the focus of the advice and conversations were how to defend the claim, as it was adversarial in nature.

These documents also are protected under the attorney-client privilege. It is clear that State Auto was engaging with attorneys at HeplerBroom, and vice versa, to get legal information and understand legal strategy in place during the nature of the underlying uninsured motorists' coverage lawsuit. There are many indications that HeplerBroom and State Auto intended those conversations to be confidential in light of discussions regarding strategy, depositions, and other matters. The following notes are protected by attorney-client privilege word-for-word emails between State Auto and HeplerBroom. 1, 3, 4, 7-15, 17-20, 22-24, 26, 28-38, 40-44, 47-55, 57-60,

62, 64-66, 69-71, 73-74, 76-78.

Additionally, there are also notes that State Auto made after phone calls with HeplerBroom. These notes are similarly protected by attorney-client privilege because it contains summaries, impressions, advice, and other thoughts between State Auto and its attorneys at HeplerBroom. The following notes are properly redacted: 2, 5-6, 16, 25, 27, 45-46, 56, 61, 63, 67, 75.

### B. "At Issue" Exception to Attorney-Client Privilege

Under the "at issue" exception to the work product rule, "the attorney-client privilege may be waived as to a communication 'at issue' by a party who is a holder of the privilege." *W. States Ins. Co. v. O'Hara*, 357 Ill. App. 3d 509, 520, 828 N.E.2d 842, 850 (2005). The "at issue" exception wholly comports with our commitment to full and fair disclosure and furtherance of the truthseeking process. *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 579 N.E.2d 322 (1991).

Grasle argues that the claims are made "at issue" in this case for two reasons. First, Grasle argues that State Auto's entire, unredacted litigation file is "at issue" so the Court "can determine whether Plaintiff's assertion is supported by the evidence contained in the litigation file…" (Doc. 19 at 6-7). Second, Grasle argues that the file is further "at issue" because Grasle has alleged in his counterclaim for declaratory judgment that "Plaintiff is estopped from denying coverage to Defendant under the 'mend the hold' doctrine, which prohibits an insurer from denying a claim for one reason and then changing the reason for its denial in the midst of litigation." *Id*. at 7.

The Court finds that the holder of the privilege, State Auto has not put the claims file and the conversations "at issue." First, the issue here, according to Grasle, is whether or not the alleged failure to obtain the consent of State Auto means he is not entitled to uninsured motorist coverage. The Court does not see how State Auto has made its litigation file "at issue" regarding consent.

Consent requirement is in the agreement signed by Grasle. State Auto filed a declaratory judgment based on the failure to obtain consent. Whether or not Grasle obtained consent is "at issue," which does not put attorney-client communications "at issue." Grasle would likely be the best person to determine whether or not consent was given. If, as Grasle states, Grasle and State Auto were in communication throughout 2020 and 2021 whereby Grasle sent pleadings and communications, and State Auto did not indicate consent was required, the Court has some concerns as to whether or not State Auto, in fact, changed its position regarding coverage. But that issue is not presented here.

The Court finds that State Auto has not put its claims file "at issue" regarding the failure to obtain consent of State Auto to settle the workers' compensation claim.

Next, Grasle argues the unredacted file is "at issue" because of Grasle's "mend the hold" doctrine argument. The mend-the-hold doctrine prevents an insurer from denying coverage on one ground, and then changing its position to deny coverage on another ground after it has been sued. *See generally Smith v. Union Automobile Indemnity Co*., 323 Ill. App. 3d 741, 745 (2001). However, this is Grasle's claim and not an issue that the holder of the privilege has put "at issue." The Courts are concerned of parties putting a matter "at issue" put using the issue as both a sword and shield. For example, the Courts have found that criminal defendants who raise a claim of ineffective assistance of counsel implicitly waive their attorney-client privilege. *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 201, 156 N.E.3d 1212, 1247. Additionally, litigants who raise "advice-of-counsel" defense generally waives any claim its communications with attorneys are privileged. *Id*. Here, State Auto has not put its communications "at issue" because of Grasle's "mend the hold" doctrine.

While courts do not have a "robotic limitation" of implied-waiver, *see id.*, the doctrine is

"based first and foremost on fairness." *Id*. at 1248. Thus, the Court is unclear the final arguments the parties will be making after the close of discovery. The Court can reevaluate these claims if Grasle requests to determine whether it believes State Auto seeks to use its "attorney-client communications as a sword for its tactical advantage, while at the same time trying to hide behind the privilege to prevent the opposing party from determining the truth of its assertions." *Id*. (cleaned up).

State Auto cites *Waste Management* in its defense. The Court finds *Waste Management* distinguishable in the instant case. *Waste Mgmt., Inc.*, 144 Ill. 2d 178, 190–91, 579 N.E.2d 322, 327 ("it is the very conduct of defense counsel in the underlying litigation which is the basis of insurers' declaratory judgment action and its defense to insureds' declaratory judgment action."). *Waste Management* was a case regarding a "cooperation clause" whereby insureds agreed to give "all such information and assistance as the insurers may reasonable inquire." *Id*. at 327-28. The court stated that based on the broad nature and plain meaning of the cooperation clause in the insurance agreement, "it cannot be seriously contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy." *Id*. 328. The same situation is not present here. Based on the reasoning in *Waste Management*, Court could require disclosure of any communications between Grasle and State Auto that demonstrates Grasle did or did not achieve consent of State Auto, but those communications are not at issue. Additionally, for the reasons stated below, the *Waste Management* is inapplicable because this situation is not a "common interest" situation.

C.  **Common interest Exception to Attorney-Client Privilege**

Under the "common interest doctrine," when an attorney acts for two different parties who

each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. *Waste Mgmt., Inc.*, 144 Ill. 2d 178, 193, 579 N.E.2d at 328. "This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer." *Id*. (internal citations omitted).

While Grasle does not make this argument in its brief (Doc. 19), during the status conference set on this issue, Grasle maintained that communications where an insurer has a common interest in defending an action against an insured, those communications are discoverable. State Auto argues "this was not a situation where an insurer and an insured had a common interest in defending a third-party claim but was instead a first party adversarial claim in which the communications between State Auto and its attorneys were privileged." (Doc. 20 at 3). Grasle had his own counsel and State Auto maintained its own counsel. *Cf Rogers v. Robson* (1979), 74 Ill.App.3d 467, 472, 30 Ill.Dec. 320, 392 N.E.2d 1365 (when insurer retains attorney to defend insured, attorney represents both insured and insurer in furthering interests of each). The Court does not find that HeplerBroom was acting for two different parties with a common interest.

**D.  Insurance Reserves**

State Auto has met its burden that the following notes 21, 39, 68, 72 should remain redacted. Such insurance reserves are generally not considered relevant in insurance coverage disputes. *Velsicol Chem., LLC v. Westchester Fire Ins. Co*., No. 15-cv-2534, 2016 WL 4398061, at *2 (N.D. Ill. Aug. 18, 2016) (stating insurance reserves generally not considered relevant in insurance disputes but finding holder of privilege did not meet its burden regarding privilege because Court "left to wonder who prepared this document, and for what purpose").

## IV.     Conclusion

This is the Court's order pursuant to an in-camera inspection. The Court finds that State Auto's claims file is properly redacted and withheld on the basis of attorney-client privilege and/or work product privilege. The Court therefore denies Grasle's request to compel State Auto's disclosure of documents.

**IT IS SO ORDERED.**
**Dated: June 22, 2022**

                                                      **/s/ J. Phil Gilbert**
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**